Olivier D. L. DuPont (OD-2817)
DEORCHIS & PARTNERS, LLP
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MEDITERRANEAN SHIPPING COMPANY, S.A.

Plaintiff,

- against -

SUNNY LIGHT, INC. D/B/A SUNNY LIGHT COMPANY and SHANGHAI QIU XIN CO., LTD.,

Defendants.

---------------------------------------------------------------X

ECF CASE

Case No. 08cv1908 (RMB)

**VERIFIED COMPLAINT AND RULE B ATTACHMENT**

Plaintiff MEDITERRANEAN SHIPPING COMPANY, S.A. ("MSC"), by its attorneys, DeOrchis & Partners, LLP, as and for its Complaint against Defendants SUNNY LIGHT, INC. A/K/A SUNNY LIGHT COMPANY ("SUNNY LIGHT") and SHANGHAI QIU XIN CO., LTD., ("SHANGHAI CO."), alleges upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333. This Court may exercise supplemental jurisdiction over MSC's state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper under 28 U.S.C. §§ 1391 (c) and article 2(b) of MSC's bill of lading.

**PARTIES**

3. At and during all times hereinafter mentioned, Plaintiff MSC was and still is a foreign corporation organized and existing under and by virtue of the laws of the State of Switzerland, with an office and principal place of business located at 40 avenue Eugene Pittard, Geneva, CH-1206, Switzerland. MSC, at all times hereinafter mentioned, was engaged in the business of ocean transportation services.

4. Upon information and belief, Defendant SUNNY LIGHT was and still is a corporation organized and existing under and by virtue of the laws of one of the state of the U.S. with an office and principal place of business located at 39 Bellevue avenue, Appleton, 54913 Wisconsin. SUNNY LIGHT, at all times hereinafter mentioned, was engaged in the business of buying and selling groceries.

5. Upon information and belief, Defendant SHANGHAI QIU XIN CO., LTD. was and still is a corporation organized and existing under and by virtue of the laws of China with an office and principal place of business located at no. 220 Jiadang Road, Jiading Dist., Shanghai, China. SHANGHAI QIU XIN CO., LTD., at all times hereinafter mentioned, was engaged in the business of import and export.

**BACK GROUND FACTS**

6. On or about March 17, 2005 MSC issued bill of lading MSCUNC456950 for the transportation by sea of two containers bearing serial numbers MSCU8737393 and MSCU8242558 containing bales of "pulp adult disposable diapers" from New York to Shanghai, China. Attached hereto as Exhibit A is a true and accurate copy of bill of lading MSCUNC456950 and its terms and conditions.

7. The containers were shipped freight prepaid by defendant SUNNY LIGHT.

8. The shipment arrived in Shanghai, China and was unloaded by MSC on or around April 24, 2005. However, the consignee, defendant SHANGHAI CO, failed to pick up the containers with Chinese customs.

9. Plaintiff sent a notice of abandonment to the Defendants on or around May 27, 2005.

10. Defendant SUNNY LIGHT asked Plaintiff for a waiver of the demurrage and that the containers be shipped back to the United States.

11. A request to Chinese customs for the return of the containers to the United States was not approved on or around January 2006.

12. A first provisional invoice for demurrage charges were sent to defendant SUNNY LIGHT on or around January 13, 2006.

13. On or around May 31, 2007, Plaintiff informed defendant SUNNY LIGHT that Chinese Customs required Plaintiff to destroy the shipment in Shanghai and that the cost for the destruction would represent about $13,341.00.

14. On June 28, 2007, Plaintiff informed defendant SUNNY LIGHT that the shipment had been destroyed and that it was responsible for those charges.

15. Plaintiff sent its final invoice for an amount of $89,800.00 for demurrage charges and destruction costs associated with the shipment transported under bill of lading MSCUNC456950 on July 11, August 10 and September 6, 2007.

16. On November 19, 2007, Plaintiff's counsel sent a letter to defendant SUNNY LIGHT requesting the payment of $89,800.00 and advising that legal action would be taken in the absence of a full payment.

17. Plaintiff has not received payment.

**AS FOR A FIRST CAUSE OF ACTION**
**FOR PAYMENT OF CHARGES INCURRED BY PLAINTIFF**
**AS AGAINST ALL DEFENDANTS**

18. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

19. The terms of the bill of lading MSCUNC456950 govern the contractual relationship between Plaintiff and the Defendants.

20. The Defendants are liable to Plaintiff under sections 21, 23, 24 and 30 of the bill of lading for all demurrage charges and charges associated with the destruction of the shipment at the port of arrival.

21. The Defendants never contested the existence of the charges.

22. Plaintiff seeks payment of the charges incurred in the amount of $89,800.00 for unpaid demurrage charges and charges associated to the destruction of the shipment under the terms of its bill of lading MSCUNC456950.

**AS FOR A SECOND CAUSE OF ACTION**
**FOR QUANTUM MERUIT**
**AS AGAINST ALL DEFENDANTS**

23. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

24. Plaintiff incurred charges for the Defendants.

25. These charges are in the amount of $89,800.00.

26. The Defendants failed to pay Plaintiff of its charges.

27. By reason of the foregoing, Plaintiff suffered damages in a sum of $89,800.00.

28. Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against the Defendants, and further, award Plaintiff its fees and costs and additional relief as this Court deems just.

**APPLICATION FOR ISSUANCE OF A RULE B ATTACHMENT**

29. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

30. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, the Defendant has, or will have during the pendency of this action, assets within this District and subjects to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, Deutsche Bank, UBS, and/or Standard Chartered Bank, which are believed to be due and owing to the Defendants.

31. The total amount sought to be attached by Plaintiff pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims is $89,800.00, plus interest and costs, calculated as follows:

(i) Demurrage charges and charges associated to destruction of shipment paid by Plaintiff: $89,800.00

(ii) Pre-judgment interest at 9% from 07/11/2007 to 02/07/2008: (210 days/365 days * $89,800.00 @ 9%) $4,649.91

**Total:** **$94,449.91**

32. Plaintiff respectfully seeks an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching any assets of the Defendants, held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants, and to secure and/or satisfy Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

(a) For a Judgment to be entered in favor of Plaintiff on each and all of the Causes of Action above;

(b) For a Judgment awarding Plaintiff damages;

(c) For a Judgment awarding Plaintiff its reasonable costs and expenses, including attorneys' fees incurred in connection with the prosecution of this action to the extent allowed by law;

(d) For a Judgment awarding Plaintiff such other and further relief as the Court may deem just and equitable;

(e) That process in due form of law issue against each one of the Defendants, citing each to appear and answer under oath all and singular the matters alleged in the Complaint;

(f) That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and

Maritime Claims, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, HSBC, Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, Deutsche Bank, UBS, and/or Standard Chartered Bank, which are believed to be due and owing by the Defendant, in the amount of $94,449.91 to satisfy and/or secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

(j) That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

Dated: New York, New York
February 7, 2008

DEORCHIS & PARTNERS, LLP
Attorneys for Plaintiff

By:____________________________

Olivier D. L. DuPont (OD-2817)
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

## VERIFICATION

Olivier D. L. DuPont declares and states that he is a member of the law firm of DeOrchis & Partners, LLP, attorneys for Plaintiff in this action, and that the foregoing Verified Complaint is true to his knowledge, except as to matters therein stated on the information and belief and as to those matters, he believes them to be true; that the ground of his belief as to all matters not stated upon knowledge is information furnished to him to by Plaintiff; that the reason why the Verification is not made by Plaintiff is that Plaintiff is a corporation whose principal place of business is outside the New York County, and that due to the exigent nature of this proceeding it was not possible to obtain a Verification from Plaintiff; and that he is authorized to so verify.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2008

**Olivier D. L. DuPont**

**EXHIBIT A**

**(Bill of lading MSCUNC456950 and terms and conditions)**

MSC MEDITERRANEAN SHIPPING COMPANY S.A., Geneva

Copy - Non Negotiable

MSCUNC456950

| IS IT- PORT - TO - PORT SHIPMENT? (Fill - in Boxes 7 & 8) Tick -> | x | COMBINED TRANSPORT SHIPMENT? (Fill - in Boxes 5, 6, 9 & 10) Tick -> | No of original Bol (number & words) | No of BoL Rider Pages (number & words) |
|---|---|---|---|---|
| | | | 3 Three | 0 Zero |

(1) SHIPPER: (Full details)
**SUNNY LIGHT COMPANY.**
39 BELLEVUE PLACE
APPLETON, WI 54913
U.S.A.

REF#: 61503-10-042

(2) CONSIGNEE (NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER)
**SHANGHAI QIU XIN CO., LTD.**
NO. 220 JIADANG ROAD, JIADING DIST, TEL: 021-5992 4166
Shanghai China

(3) NOTIFY: (No responsibility shall attach to Carrier or to this Agent for failure to notify)
**SHANGHAI QIU XIN CO., LTD.**
NO. 220 JIADANG ROAD, JIADING DIST, TEL: 021-5992 4166
Shanghai China

(4) SPACE FOR CARRIER'S AGENTS ENDORSMENTS (FCL/FCL SLSC)

| | |
|---|---|
| (5) PRE_CARRIED BY: (Combined Trans. only) XXXXXXXXXXXXXXXXXXX | (6) PLACE OF RECEIPT: (Combined Transport only) XXXXXXXXXXXXXXXXXXX |
| (7) PORT OF LOADING New York NY | (8) PORT OF DISCHARGE Shanghai, China |
| (9) PLACE OF DELIVERY: (Comb. Trans. only) XXXXXXXXXXXXXXXXXXX | (10) MODE OF ON-CARRIAGE: (Comb. Trans. only) XXXXXXXXXXXXXXXXXXX |
| (11) VESSEL & VOY. No. DELAWARE BRIDGE - 0510R | (12) AGENTS AT PORT OF DISCHARGE/ DELIVERY MSC SHANGHAI |

**SHIPPER'S MEMORANDA: BOXES (A) TO (E) AND BOX 13 ARE NOT PART OF THIS B/L CONTRACT - FOR MERCHANT'S USE ONLY.**

(A) DOCUMENT No: NYC213197

(B) SERVICE CONTRACT No:

(C) POINT & COUNTRY OF ORIGIN: United States

(D) FORWARDING AGENT - REFERENCE
**FR. MEYER'S SOHN NORTH AMERICA LLC**
ONE FIRST AVENUE, SUITE 100
West Reading, PA 19611

REF#:

FMC #: 16991F

(E) SECOND NOTIFY

**(14) CARRIER'S RECEIPT** (Continued on attached Bill of Lading Rider page(s), if applicable)

(13) All details shown in Box 13 are furnished by the Shippers, being their Memoranda. Quantity, Condition, Contents and all other information shown in Box 13 are unknown to the Carrier, who has no means to verify their correctness and does not acknowledge them. The statements of the Shippers in Box 13 do not engage the Carrier contractually or in any manner.

| Identity Marks of Cont. or other packages and seal number(s) | Corresp number of cont. or other packages | Total nbr of ctrs or other packgs received by the carrier | Haz Code | Cargo Description (Continued on attached Bill of Lading Rider page(s), if applicable) | Gross Weight | Measurement |
|---|---|---|---|---|---|---|
| MSCU8737393 40' High Cube 9495359 | 1 | 1 | | 34 Bale(s) of PULP ADULT DISPOSABLE DIAPERS. | 12,930.000 kgs. 28,505.771 lbs. | 40.000 cu. m. 1,412.576 cu. ft. |
| MSCU8242558 40' High Cube 9495389 | 1 | 1 | | 40 Bale(s) of PULP ADULT DISPOSABLE DIAPERS. 2 X 40' CONTAINERS 74 BALES 26870.00 KG | 13,940.000 kgs. 30,732.439 lbs. | 40.000 cu. m. 1,412.576 cu. ft. |
| | | | | No SED required AES - 510401141-61503-10-042 | | |

If above commodities, technology or software were exported from the USA, the export administration regulations must be complied with by the Merchant. Diversion contrary to US law is prohibited.

(15) FREIGHT & CHARGES ("PAYABLE" signifies INTENTION. Cargo shall not be delivered unless Freight & Charges are paid)

**Freight Prepaid**

| FREIGHT & CHARGES | BASIS | RATE | | PAYABLE at POL | | PAYABLE at POD | ELSEWHERE |
|---|---|---|---|---|---|---|---|
| Ocean Freight | 2.00 | USD | 700.00 | USD | 1,400.00 | | |
| Bill of Lading / Documentation | 1.00 | USD | 25.00 | USD | 25.00 | | |
| Ad Valorem Charges if Any | | | | | 1,425.00 | | |

IN ACCEPTING this bill of lading the Merchant agrees to be bound by all the terms, conditions, limitations and exceptions whether printed, stamped or written herein and page 1 and in particular agrees that the Carrier shall have the right to stuff cargo in containers and to carry on deck all kinds of containers including [illegible]. The Carrier will give three days container utilization from release of container, which includes the day of collecting [illegible]. RECEIVED FOR SHIPMENT in apparent external good order and condition the containers, other packages or units bearing marks and /or numbers indicated in the "Carrier's Receipt" above, said to contain the quantity of goods, weights and measurements indicated in the "Particulars furnished by Shipper" above, which particulars have not been checked or verified by the Carrier. Such particulars are for Shipper's and Consignee's use only and are not part of the bill of lading terms and are not binding on the carrier. IN WITNESS whereof, the no. of Original Bills of Lading shown at the top right corner of this contract have been signed. [illegible]

| PLACE AND DATE OF ISSUE | SHIPPED ON BOARD | As Agents for the Carrier |
|---|---|---|
| NEW YORK - MSC (USA) INC. 17-Mar-2005 | DATE 17-Mar-2005 | |

DEFINITIONS CLAUSE. This contract [illegible] «Merchant» occurs in this Bill of Lading, the [illegible] Lading, the Receiver and the Owner of the Goods (whose liability under this B/L is joint and several). «Carrier» shall mean the vessel and her owner or demise charterer for whom the Master has entered into this contract. The identity of the owners is available from Lloyd's Register of Ships or from Mediterranean Shipping Company (hereafter «MSC»). MSC shall act as Agents of the owner of demise charterer in arranging the transport covered by this B/L. If, however, it is adjudged for any reason, that any other charterer, carrier, manager, operator, agent or MSC is liable as Carrier, then such party shall have the benefit of all the defences, exceptions and limitations applicable to the Carrier herein. "Goods" includes the cargo supplied by the Merchant and includes any container whether or not supplied by or on behalf of the Carrier. "Container" includes any container, trailer, transportable tank, lift van, pallet, flat or any similar article of transport used to consolidate goods.

1. PARAMOUNT CLAUSE. This B/L shall have effect as follows:
(a) For all trades, except for goods shipped to or from the United States of America, this B/L shall be subject to the 1924 Hague Rules with the express exclusion of Article IX or, if compulsorily applicable, subject to the 1968 Protocol (Hague-Visby) or any compulsory legislation based on the Hague Rules and/or said Protocols. Where Hague-Visby or similar legislation is compulsorily applicable, the Hague-Visby 1979 Protocol ("SDR" Protocol) shall also apply whether or not mandatory.
The Carrier's tariffs and regulations are incorporated herein as if set forth at length, and copies may be requested in writing from the carrier or any of its agents.
(b) For goods shipped to or from the United States of America this B/L shall be subject to the U.S. Carriage of Goods by Sea Act, 1936, and the U.S. Bill of Lading Act 1916 (Pomerene), which shall also apply by contract at all times before loading and after discharge as long as the goods remain in the custody and control of the carrier.

2. LAW AND JURISDICTION.
(a) Any claim or dispute arising from the Contract of Carriage evidenced by this B/L shall be subject to the exclusive jurisdiction of the High Court of Justice in London, and English law shall be applied.
(b) Contrary to (a), any claim or dispute arising from the Contract of Carriage evidenced by this B/L relating to cargo carried to or from the United States of America shall be subject to the sole jurisdiction of the United States, U.S. District Court, Southern District of New York, and United States law shall be applied.
(c) In addition to the above, in case of any dispute relating to freights and other sums payable to the carrier under this contract, the Carrier may, at its option, apply to the court of the port of discharge and/or to the court of the place of final destination (in case of combined transport), provided that such application is not in conflict with the Brussels/Lugano Conventions.

3. SEVERANCE CLAUSE. In case of any part thereof in this B/L, which is found by the Court determining a claim under this B/L, to conflict with the provisions of any compulsorily applicable convention or national law, which cannot be departed from by agreement or contract, shall, to the extent of any inconsistency but no further, be void and such clause or part thereof shall be severable from any of the remaining provisions of this B/L which confer any defences, liberties, exceptions, limitations which operate in favour of the Carrier or its Subcontractors, Agents, Charterers, employees or independent contractors or others who are subject to proceedings involving a Merchant.

4. PERIOD OF RESPONSIBILITY.
*(a) Port to Port shipment (refer to boxes 7 and 8 on the face of this B/L)*
(i)Arises if the Carriage called for by this B/L is not Combined Transport.
(ii) The responsibility of the Carrier is limited to that part of the Carriage from and during loading onto the vessel up to and including discharge from the vessel and the Carrier shall not be liable for loss or damage to the goods during the period before loading onto and the period after discharging from the vessel, howsoever such loss or damage may arise. Loading and discharge take place when the goods pass the vessel's rail or ramp.
(iii) When the goods are in the custody of the Carrier and/or his subcontractors before loading and after discharge, whether being forwarded to or from the vessel or whether awaiting shipment landed or stored, or put into hulk or craft belonging to the Carrier, or pending transhipment, they are in such custody for the risk and account of the Merchant without any liability of the Carrier.
(iv) When the place of origin or final destination of the goods is other than the port of loading or the port of discharge, the Carrier may take care of the forwarding to the port of loading and/or from the port of discharge, but the Carrier shall perform this service only as forwarding agent for the Merchant without accepting any liability for loss, damage or delay. In such case the Contract of Carriage evidenced by this B/L shall commence upon actual loading onto the vessel and end upon actual discharge from the vessel (be it in port of loading and/or discharge mentioned in this B/L or not) and the Carrier shall not be liable for the loss or damage to the goods arisen during or after the forwarding period, before actual loading onto and/or the period after actual discharge from the vessel, howsoever such loss or damage may arise.
(v) If goods are shipped to or from the United States of America, US COGSA shall apply before loading and after discharge as long as the goods remain in the custody and control of the Carrier.
*(b) Combined Transport shipment (refer to boxes 5, 6, 9 & 10 on the face of this B/L)*
Arises if the Place of Receipt (Box 6) and/or the Place of Delivery (Box 9) on the face of this B/L have been agreed between Merchant and Carrier and the respective places have been entered in the Boxes 6 and 9 on the face of this B/L.
Save as it is otherwise provided in this B/L the Carrier shall be liable for the loss of or damage to the goods occurring from the time that the goods were taken into his charge until the time of delivery, to the extent set out below:
(A) Where the stage of Carriage where the loss or damage occurred cannot be proved:
(i) The Carrier shall be entitled to rely upon all exclusions under the rules or legislation that would have applied under Clause 4 (a) above.
(ii) Where under (i) above the Carrier is not liable in respect of some of the factors causing the loss or damage, he shall only be liable to the extent that those factors for which he is liable have contributed to the loss or damage:
(B) Where the stage of Carriage where the loss or damage occurred can be proved, the liability of the Carrier shall be governed by the rules of law applicable to the stage of Carriage where the loss or damage occurred, as follows. If these rules are inconsistent with the conditions of carriage these rules will be set aside, unless they apply compulsorily:
- by sea and inland waterway: The Hague Visby Rules
- by road: the CMR Convention of Geneva, 19th May 1956, with the Protocol dated Geneva, 5th July 1978
- by rail: the CIM Convention of Bern, dated 7th February 1970 and COTIF Convention of Bern, 9th May 1980
- By air: the Convention on the International Carriage by Air, dated Warsaw, 12th October 1929, as amended by Protocols dated The Hague, 28th September 1955, the Convention of Guadalajara, 18th September 1961, and the Convention of Montreal, 28th May 1999;
- In case of loss or damage to the goods during rail or road carriage within a country, the national law of that country may apply. Notwithstanding any other clause to the contrary herein, the Carrier's maximum liability shall be limited to 2 (two) SDR per Kg of the gross weight of the goods lost or damaged.

5. SUBSTITUTION OF VESSEL, THROUGH TRANSPORT, TRANSHIPMENT AND FORWARDING. Whether expressly arranged beforehand or otherwise, the carrier shall be at liberty to carry out the transport wholly or partly by the said or other vessel or vessels either belonging to the carrier or others, or by other means of transport, proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, land and store the goods either on shore or afloat and reship and forward the same at Carrier's expense but at Merchant's risk.

6. THE SCOPE OF VOYAGE. The voyage herein undertaken shall include usual or customary or advertised ports of call whether named in this contract or not, also ports in or out of the advertised geographical, usual or ordinary route of order, even though in proceeding thereto the vessels may sail beyond the port of discharge or in a direction contrary thereto, or depart from the direct or customary route or in a direction contrary thereto. The vessel may call at any port for the purpose of the current voyage or of a subsequent voyage. The vessel may omit calling at any port or ports whether scheduled or not, and may call at the same port more than once, either with or without the goods on board, and before or after proceeding towards the port of discharge, adjust compasses, dry-dock, go on ways or to repair yards, shift berths, undergo degaussing, wiping or similar measures, take fuel or stores, land stowaways, remain in port, sail without pilots, tow and be towed, and save or attempt to save life or property, and all of the foregoing are included in the contract voyage. The vessel shall never be called upon to proceed to a place where she cannot safely get and lie always afloat.

7. LOADING, DISCHARGING AND DELIVERY OF THE CARGO. Loading, discharging and delivery of the cargo shall be arranged by the Carrier's Agents unless otherwise agreed. Landing, storing and delivery shall be for Merchant's account. Loading and discharging may commence without previous notice. The Merchant or his assignee shall tender the goods when the vessel is ready to load and as fast as vessel can receive and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the vessel may leave the port, without further notice and deadfreight is to be paid. The vessel may commence discharging immediately on arrival without notice to the consignee or any other party, and discharge continuously with or without sorting the goods, or separating them from other goods (whether or not such other goods are in the same ownership) irrespective of whether by day or by night, Sundays and holidays included, any custom of the Port to the contrary notwithstanding, on to quay, or into shed, warehouse, depot, hulk, lighter or other premises, vehicle, vessel or craft as the Carrier or his agents may determine. Such discharge shall constitute due delivery of the goods under this Bill of Lading. Demurrage-free time starts. The consignee shall bear any charges or expenses incurred by the Carrier wholly or partly in respect of sorting the goods or separating them from other goods (whether in the same ownership or not) onshore or onboard for any purpose whatsoever, including any charge or expenses in connection with storage onshore or afloat pending such sorting or separation, and any apportionment of such charges or expenses by the Carrier among different consignees by any method whatsoever in the discretion of the Carrier shall for the purpose of this clause be final and binding upon the consignees. Delivery over side onto the consignee's lighters is at the vessel's options and, if declared, is subject to the consignee providing sufficient lighters and men to receive the goods as fast as the vessel can deliver, any custom of the Port to the contrary notwithstanding. Whether the vessel's tackles or shore cranes or other means be employed in the course of delivery onto Quay or otherwise, any loss of, or damage to the goods, lighters or injury to personnel employed directly or indirectly by the consignee shall, after the end of the Hague Rules period, be at the sole risk of the consignee in every respect whatsoever. The Carrier, his agents and servants shall not under any circumstances whatever be under any liability for failure to notify the consignee of the arrival of the goods, any custom of the port to the contrary notwithstanding. All expenses connected with the loading and discharging up to and from ship's tackle are for the account of the Merchant. If the goods are not taken by the Merchant at the time when the Carrier is entitled to call upon him to take delivery, the Carrier shall be at liberty at the sole risk and expense of the Merchant to put the goods in safe custody. For cargoes of such nature that Port Authorities allow loading and discharge by direct delivery only, the Merchant shall be notified by the agent if so possible. Should the Merchant fail to arrange direct delivery all relevant charges including return freight and handling will be charged to the cargo interests.

8. HAZARDOUS GOODS, MARKINGS. Goods of a dangerous or hazardous nature and radio-active material shall not be tendered for shipment unless a written certificate of declaration, issued in accordance with the applicable national laws and regulations at both port of loading and port of discharge, has been given to the Carrier proving: (a) that the goods, and, if applicable, the container, flat, trailer, etc., are properly marked, labelled and are adequately packed, and, (b) the correct technical name, nature and class of dangerous goods are clearly stated. The Merchant shall also be responsible for including such information in the «Particulars Furnished by the Merchant» marking each such item with the appropriate Hazard Code in the column entitled «HAZ CODE» in Box (13) of this B/L. Merchant expressly agrees to fully indemnify and hold the Carrier harmless in respect of all and any prejudice caused to the Carrier due to Merchant's failure to comply with the above.
(c) Marking, Sorting, Etc. The Merchant shall ensure that break-bulk goods shall be distinctly and permanently marked. Each consignment shall be sorted according to marks and in such order as to enable separate stowage and corresponding delivery.

9. DEPARTURE AND ARRIVAL DATES, DELAYS AND CONSEQUENTIAL LOSS. The Carrier's liner position lists, sailing lists and other advertisements, are given without any warranty, and no claims shall be acceptable for any change in the dates nor even in the case of the vessel's non departure for whatever cause. Carrier shall have the right to change sailing and arrival dates without notice. The Carrier does not undertake that the goods shall arrive at the Port of Discharge or Place of Delivery at any particular time or to meet any particular market or use, and the Carrier shall under no circumstance be liable for direct, indirect or consequential loss or damage due to delay or any other cause whatsoever and howsoever caused.

10. EXPORT OR IMPORT IMPEDIMENTS. Should the goods be refused exportation or importation by any government or authority, or by anybody purporting to act with the authority of any government or authority, or should the goods in the Carrier's opinion be in such condition that he considers it advisable to discharge, tranship, return, remove or destroy them, then he shall be entitled to do so at any port or place. In such case the Merchant shall bear the risk for the goods and the cost directly or indirectly incurred and in such cases the freight remains earned and additional freight is payable by Merchant for extra transportation or handling or for carriage beyond the port or place where the Carrier would have been entitled to discharge the goods.

11. DECLARATION OF NATURE, WEIGHT OR MEASUREMENT OF GOODS AND OF CONTENTS OF PACKAGE. If the nature or the value of the cargo has been misstated to the Carrier, the Merchant is not liable to any indemnification whatsoever. In all cases, incorrect statements shall be considered to have been wilfully misstated. The Merchant is bound to declare exactly the contents of the packages or containers, the weight and the measurement of the goods, and shall be liable for all consequences of damage, which might be caused to the vessel or cargo owing to a false declaration, incorrect description, marks or numbers, or incomplete, incorrect or delayed requisite documentation. If on delivery of the goods it is ascertained, either at the time of loading or at any time of unloading that the weight or cubic measurement or value is greater than that declared, or that the goods belong to a higher category than that declared, the Carrier has the right to charge double freight on the ascertained difference, the Merchant to pay the labour and expenses of weighing and measuring the goods entered in this Bill of Lading, if any excess of weight or measurement should be found. This debt is claimable at the same time and in the same manner as the freight, and shall constitute a lien on the goods.

12. IRON AND STEEL PRODUCTS. The Carrier need not take exceptions to, and is not held responsible for atmospheric rust, superficial oxidation, white rust, or any other alteration due to unavoidable sweat or moisture, which might affect the external aspects of the iron or steel goods or result from their special nature.

13. TIMBER. Any statement herein that timber has been shipped in apparent good order and condition does not involve any admission by the Carrier as to the absence of stains, warps, shakes, splits, holes or broken pieces, and this clause shall be deemed to constitute express notice to all persons taking delivery on the terms of this Bill of Lading that such timber does or may contain pieces so affected.

14. (a) FRAGILE CARGO. All articles of glass or contained in glass, or any of a fragile nature will be taken on board at Merchant's risk only, and the Merchant agrees that the Carrier or Carriers shall not be held responsible for any injury or breakage or otherwise.

(b) REEFER, CHILLED OR HEATED CARGO. Refrigerated or heated carriage and carriage at controlled temperatures shall not be furnished unless specifically stipulated in Box 13 (Particulars Furnished by the Merchant), reverse side, and extra freight paid per tariff. If a carrying temperature is specified in Box 13, it is agreed that the Merchant shall ship the goods at that temperature, plus or minus 2°C, and the Carrier shall carry the goods at that temperature plus or minus 2°C, since it is understood that reefer machinery is not designed to freeze the goods or to lower their temperature and that exact temperatures cannot be maintained by the reefer machinery at all times. The carrier shall [illegible] liability whatsoever for the [illegible]
(c) Carrier shall not be responsible for damage to cargo shipped in ordinary containers due to ambient low or high temperatures.
(d) The Carrier shall not be responsible for loss or damage to fruit or vegetables due to deterioration, decay, rot, heat or frost, discolouration, change of skin texture, not for marked, cut or stained bags or boxes or other packages of freight. Fruits, vegetables and other perishable Goods are carried expressly at the sole risk of the Merchant.

15. SPECIAL CARGO. For theft and loss of gold, silver, precious metals, in a manufactured state or not, or specie, ornament, watches, furs, laces, jewels, precious stones, securities, paper money, documents or other papers of value, silk, paintings, porcelain, glassware or other precious articles or valuable articles and for damage to precious articles easily damageable, the Carrier is only responsible if the value and nature of the cargo are declared to him before or at any time of reception of the cargo and inserted in the Bill of Lading and provided freight is calculated on the basis of such value. All cargo the value of which exceed 5 pounds Sterling per cubic foot measurement, or per cwt for weight cargo, is classed as precious. Money and all objects of value must be packed in double bags with inside seams, or in boxes, both sealed with wax and the seal must be reproduced on the Bill of Lading and shipping orders. In case of such shipments, this present B/L is deemed to become automatically not a B/L or document of title in respect of such cargoes, but to take the substance of a non-negotiable receipt, not subject to the Hague Rules, the Hague-Visby Rules, the COGSA, which shall not apply.

16. DECK CARGO AND LIVE ANIMALS. All goods stated herein to be carried on deck, and live animals, birds or fish are received, handled, stowed, carried, kept and discharged at Merchant's risk and the Carrier shall not be liable for loss thereof, damage or delay whatsoever and howsoever occurring even though resulting from unseaworthiness of the ship or from the negligence of the Carrier, his servants or agents or in case of deviation of the ship.

17. CONTAINERS. The Merchant shall have the responsibility for inspecting before use any container furnished by the carrier to ascertain its suitability for the purpose of the carriage of the Merchant's goods and to ascertain that it is clean and intact. Acceptance of the container by the Merchant shall be prima facie evidence of its suitability and good condition. If the shipper or his servant stuffs the container, the Merchant shall be responsible for proper stowage and securing of the goods to insure ventilation and to avoid shifting. The Carrier shall be indemnified by the Merchant for any loss or damage of whatsoever nature to the container or to other property, or for any injury to personnel caused by the goods or their improper stuffing or securing. The Merchant is always liable towards the Carrier for all damage and loss sustained by the Carrier and/or his subcontractors, which may be caused by the Merchant's cargo.

18. FREIGHT & WAR RISKS CHARGES. Full freight hereunder shall be considered completely earned upon receipt of the goods by the Carrier, whether the freight is stated to be prepaid or collect, and the Carrier shall be entitled to all freight and charges due hereunder, whether actually paid or not, under all circumstances, ship and/or cargo are lost or not lost or the voyage broken up or abandoned. All freight and charges shall be paid without any offset, counter claim, or deduction when due. The Carrier shall have a lien on the goods for non-payment of the freight charges, and the Merchant shall be liable for legal fees and expenses if the Carrier has to take legal action. Dues, duties, charges and fines relating to the goods shall be paid by the Merchant before the goods are released by the Carrier. The Merchant shall reimburse the Carrier in proportion to the amount of freight for any increase of war risk insurance premium and war risk increase of the wages of the Master, officers and crew and for any increase of the cost of bunkers and for deviation or delay caused by war or warlike operations or by government directions in this respect.

19. LIABILITY OF SERVANTS AND SUB-CONTRACTORS. It is hereby expressly agreed that no servant or agent of the Carrier, including any independent sub-contractor employed by the Carrier, including security guards, charterers and participating land, air or sea carriers, in any circumstance whatsoever be under any liability whatsoever to the Merchant for any loss or damage or delay of whatsoever kind arising or resulting directly or indirectly from any act neglect or default on his part while acting in the course of, or in connection with his employment and, without prejudice to the generality of the foregoing provisions in this clause every exception, limitation, condition and liberty herein contained and every right exception from liability, defence and immunity of whatever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier (including any stevedore, terminal operator or any other independent contractor) acting as the aforesaid and for the purpose of the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as an agent or trustee on behalf of and for the benefit of all persons who are or might be his servant or agent including all independent contractors, as aforesaid) and all such persons shall to this extent be or be deemed to be party to this Bill of Lading.

20. SPECIAL CIRCUMSTANCES. If during the voyage special circumstances occur with regard to the vessel and/or her cargo, or the vessel has to put into a port of distress or such like port, or if the vessel experiences exceptional delay at a port or place, the Master or Carrier at their sole discretion has the liberty, notwithstanding all measures for the common good of the vessel and cargo, to take such measures on behalf of the cargo as they jointly or severally consider necessary and desirable; such measures being for the account of the cargo, and without prejudice to eventual indemnification in General Average. Regarding damaged cargo or cargo the further transport of which is objectionable, or cargo by another conveyance at the expense of the cargo and without prejudice to eventual indemnification in General Average, full freight is still payable. The Master or Carrier, in making arrangements for any transhipping or forwarding vessel or means of transportation not operated by the Carrier or Master, shall be considered solely the forwarding Agent of the Merchant and without any other responsibility whatsoever.

21. GOVERNMENT DIRECTIONS, WAR, EPIDEMICS, ICE, STRIKE ETC. (a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel right to give such orders or directions or recommendations. (b) Should it appear that the performance of the transport would expose the vessel or any goods onboard to risk of seizure or damage or delay, resulting from war, warlike operations, blockade, riots, civil commotion, piracy, ice conditions, strikes, or labour troubles of any person onboard to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port. (c) The discharge under the provisions of this clause of any cargo shall be deemed due fulfilment of the contract, and if any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight if any and a reasonable compensation for any extra services rendered to the goods, and the Carrier shall have a lien for all such freight and charges. (d) If any situation referred to in this clause may be anticipated, or if for any reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract.

22. CLAIMS VALUATION, PACKAGE LIMITATION, TIME-BAR. The indemnity payable by the Carrier for non-delivery of the cargo in whole or in part is calculated at the option of the Carrier on the basis of the invoice value or on the basis of market values at destination, less duties and expenses saved due to the shortage, except in USA jurisdiction where the sound market value at destination shall be considered. In any event, the Carrier's liability shall not exceed the usual sound market value of the goods at the time and place of shipment. However, should the invoice value of the goods be lower than the usual sound market value at the time and place of shipment, the Carrier will only pay the invoice value. For lack of any usual sound market value or invoice value, this provision shall apply to the common value accordingly. Neither the Carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with goods in an amount exceeding the limitation allowed under the Hague Rules or the Hague-Visby Rules / SDR limitation or the COGSA limitation, depending on which of these is contractually or compulsorily applicable, per package or unit, unless the nature and the value of such goods have been declared by the Merchant before shipment and inserted in the Bill of Lading. However, declaration of value for the purpose of calculation of freight shall not be considered a declaration in the above sense. This limitation of liability shall apply to all contractual claims as well as to any claims arising from other causes. In case goods are shipped to or from the United States, the Carrier's liability shall be limited to $500 per package or customary freight unit, unless excess value is inserted on the face hereof and extra charge paid. The words "customary freight unit" shall mean (under COGSA) the unit of weight or measurement customarily used to calculate freight. Where the goods have been packed into sealed containers by or on behalf of the Merchant, it is expressly agreed that each container shall constitute one package for the purpose of application of limitation of the Carrier's liability, since the Carrier cannot verify its contents. If the Merchant has a shortage in goods or numbers shipped under a Bill of Lading, the Carrier shall have the option to deliver as substitute any surplus goods of similar kind and quality. Notice in writing of loss or damage must be given to the Carrier's Agent at the Port of Discharge or Final Destination, promptly after delivery of the goods, and in any case within 3 running days from the date of delivery as defined in Clause 7, and the Carrier is to be invited to participate, at his option, in a joint survey. The cargo is otherwise prima facie considered delivered by the Carrier in the same condition as described in the B/L. Claims are to be addressed to the MSC Agent supported by, at least, the following documents: Claim narrative identifying clearly the claimant and providing evidence on his title to sue, Original B/L, Commercial invoice of damaged goods, Letter of Subrogation, if any, survey reports. In any event, the Carrier shall be discharged from all liability if suit is not commenced within one year after delivery of the goods or the date that the goods should have been delivered, for claims related to loss or damage during the carriage by sea, and nine months for claims related to loss or damage during non-water inland transport. Agreed claims will be settled by the Carrier only once with one of the parties that is entitled to sue, ie with the Shippers at the POL or with the Consignees at the POD, but not with both. Settlement of an agreed claim by the Carrier with either of the above fully discharges the Carrier from all and any liability for the same loss or damage under this B/L.

23. CHARGES. All expenses for tallying, measuring, weighing, tarring, repairs, repackaging, sewing etc. due to causes beyond Carrier's liability, customs and other duties and/or formalities statistic duties, stamps and all such charges, are always for account of the cargo. The Danish «Cargo duty» at the port of Copenhagen and Danish provincial ports to be paid by receivers. Loading and discharging tax No. 4 («droits de pesage») levied at French, Tunisian, Algerian and Moroccan ports are for consignee's account. If, by order of the Authorities at any place, the container has to be opened for the goods to be inspected, the Carrier shall not be liable for any loss or damage to the goods as a result of opening, unpacking, inspection or repacking. The Carrier, acting as Agent and on behalf of the Merchant in this respect, shall be entitled to recover from the Merchant all and any costs related to the above operations.

24. CUSTOMS, ETC. The Shipper and Merchant and/or their Agents and Servants including Freight Forwarders shall comply with all Statutory, Police, Port and Customs regulations, relative to the cargo, applicable in all ports under this Carriage, and shall pay and/or indemnify the Carrier for all costs and prejudices in consequence of the non-compliance with such regulations. Furthermore the Merchant shall pay and/or indemnify the Carrier for all costs, duties, fees, dues, fines, taxes, expenses (including without prejudice to the generality of the foregoing, charges for any additional carriage undertaken), imposed for whatsoever reason by one or any of the aforementioned authorities, relative to the cargo, and for equipment demurrage. In addition the Merchant is responsible for any liability that arises as a result of illegal, incorrect or insufficient marking, numbering or addressing of the goods, and shall indemnify the Carrier in respect thereof. The Carrier shall have the right before delivery, to ask for a deposit and/or sufficient security in accordance with clause 25 of this contract for any such dues and fines imposed or expected to be imposed including equipment demurrage.

25. SECURITY AND LIEN. (i) If the freight and any further charges or expenses incurred by the Carrier that are due, have not been paid or, in case the freight is payable by a party other than the receiver, including freight to be prepaid, and if advice of payment has not yet been received, the Carrier is at liberty, before the discharge of the cargo is commenced, to demand a deposit or other sufficient security for the freight, charges and expenses. If no sufficient deposit or other satisfactory security is given by the Merchant, the Carrier is at liberty to discharge and store the cargo under the custody of the local sheriff, at the expense and at the risk of the Merchant. (ii) The Carrier shall have a lien upon goods or documents, which shall survive delivery, for any claims or amounts due under this contract and costs of recovering same including equipment demurrage, and shall be entitled to sell the goods privately or by auction to cover such claims or amounts, without notice to the Merchant. If, on sale of the goods, the proceeds fail to cover the amount due and costs and expenses incurred, the Carrier shall be entitled to recover the difference from the Merchant. (iii) The Carrier shall have a lien upon the goods or documents that survive delivery in respect of outstanding sums due from the Merchant under other contracts (e.g. due in respect of previous carriage contracts). (iv) The Carrier shall have a lien upon the goods in respect of all sums payable to the Carrier under this B/L also in respect of General Average and Salvage contributions, together with the costs of maintaining the goods in storage and recovery costs thereof, including equipment demurrage (see Clause 28).

26. GENERAL AVERAGE, SALVAGE, & NEW JASON CLAUSE. General Average shall be adjusted, stated and settled according to York Antwerp Rules 1974, except Rule XXII thereof, at the place selected by the Carrier, and as to matters not provided for by these Rules, according to the laws and usage at the port of New York, NY, USA. Average agreement or bond or such other or cash security as may be required by the Carrier must be furnished before delivery of the goods. The adjustment made by the Average Adjuster shall be binding on the Carrier and the Merchant. In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Carrier is not responsible, by statute, contract or otherwise, the goods, whether carried on or below deck, and the Merchant shall contribute with Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges, including charges for handling, discharging and storage of the cargo following a General Average event, including equipment demurrage, incurred in respect of the goods. If the salvaging ship is owned or operated by Carrier, salvage shall be paid for as fully and in the same manner as if the salving ship belonged to strangers. The Goods, including containers not owned by the Carrier, shall pay their contribution to General Average even when such average is the result of fault, neglect or error of the Master, pilot or crew. The Merchant expressly renounces all codes, statutes, laws and regulations, which might otherwise apply.

27. OTHER STANDARD CLAUSES EXPRESSLY INCORPORATED in this B/L are: "War Risk Clauses 1 and 2"... "Both to Blame Collision Clause", "IG of P&I Clubs Clause on Financial Responsibility in Respect of Pollution (all ships other than self propelled and non-self propelled tank vessels) per BIMCO wording January 10th 2001".

28. FIRE: Carrier shall not be liable for any loss or damage to goods occurring at any time, even though before loading or after discharge from the vessel, by reasons or by means of any fire whatsoever, unless such fire shall be caused by the actual fault or privity of the Carrier.

29. MERCHANT'S WARRANTY. The Merchant hereby expressly warrants that he has proper authority in relation to the goods which are shipped under this B/L and holds the Carrier fully harmless in respect of any claim arising from the Shipper or Consignee not having title to the goods.

30. EQUIPMENT DEMURRAGE: Before loading the Carrier allows to Merchant three days container utilisation (in which the day of collection ex-quay is included) free of demurrage. In addition the Carrier allows a demurrage-free period in accordance with the tariff of the manifested destination and as advised by the local MSC Agent, counting from the day of discharge ex-vessel. Demurrage is levied thereafter for container, trailer and other equipment. [illegible] the joint and several responsibility of the Shipper and the Consignee and shall be returned clean and undamaged to a place nominated by the Carrier, failing which the Shipper and the Consignee shall be jointly and severally liable for all the costs of replacement, transportation, and repair, including legal costs.

31. FINAL AGREEMENT: All prior agreements, Dock Receipts or Freight Bookings of the shipment of the goods and all other arrangements are superseded by this Bill of Lading Contract or Way Bill Receipt which constitutes the Final Agreement between the Carrier and the Merchant. The terms of this Contract shall be severable, and if any provision hereof is held to be invalid or unenforceable, such holding shall not affect the validity or enforceability of any other provisions or parts of this Bill of Lading or Way Bill. Any change to this B/L must be in writing and consented to by signature of or for the Master.

038 2251 561