**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------X
MEDITERRANEAN SHIPPING COMPANY, S.A.

                        Plaintiff,

   -against-

SUNNY LIGHT, INC. D/B/A SUNNY LIGHT
COMPANY and SHANGHAI QIU XIN CO., LTD.,

                        Defendants.

-----------------------------------------------------------------------------X

Index No. 08cv1908 (RMB)

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that upon the annexed affidavit of Tony Wu, affirmed on the 6th of May, 2008, the accompanying Memorandum of Law in support of this motion, and the pleading herein, defendant requests that Judge Richard M. Barman, of the United States District Court, located at 500 Pearl Street, New York, NY, on or before May 19, 2008, for an order pursuant to Rule E(4)(f) and Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure granting defendant's motion to vacate attachment.

Date: New York, NY

    May 6, 2008

                                          WONG, WONG & ASSOCIATES, P.C.
                                        Attorneys for plaintiff

                                        By: _____//s//_____
                                        Michael Sean Weinstock, Esq.
                                        150 Broadway, Suite 1588
                                        New York, NY 10038
                                        (212) 566-8080

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
MEDITERRANEAN SHIPPING COMPANY, S.A.

                Case No. 08cv1908 (RMB)

                Plaintiff,

-against-

SUNNY LIGHT, INC. D/B/A SUNNY LIGHT
COMPANY and SHANGHAI QIU XIN CO., LTD.,

                ECF CASE

                Defendants.


-----------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ATTACHMENT

## I. PRELIMINARY STATEMENT

Defendant, Sunny Light Inc. (SUNNY LIGHT"), by its undersigned counsel, Wong, Wong & Associates, P.C., submits this Memorandum of Law in Support of Motion to Vacate Attachment pursuant to Rule E(4)(f) and Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Pursuant to an Ex Parte Attachment Order dated **(date)**, which authorized the attachment of SUNNY LIGHT's property in an amount up to $94,449.91. Plaintiff, Mediterranean Shipping Company, S.A. ("MSC"), has restrained funds in the amount of $94,449.91 being wired transferred through JP Morgan Chase Bank to SUNNY LIGHT were restrained on March 6, 2008.

The Ex Parte Attachment Order should be vacated because MSC failed to make reasonable effort to mitigate damages. MSC could either let the goods to be auctioned or ship back the containers in a timely fashion to avoid unnecessary costs. However, it seems like MSC simply

forgot about those two containers until Chinese Customs required MSC to destroy the goods about a year and four months later. MSC's recovery is unwarranted.

## II. <u>STATEMENT OF FACTS</u>

On or about March 17, 2005, Defendant SUNNY LIGHT INC. a/k/a SUNNY LIGHT COMPANY (SUNNY LIGHT") shipped seven containers to Shanghai, China to Defendant SHANGHAI QIU XIN CO., LTD. ("QIU XIN"). Two out of seven containers were shipped by Plaintiff MEDITERRANEAN SHIPPING COMPANY, S.A. ("MSC") through the shipping agent FR.MEYER'S SOHN NORTH AMERICA LLC. SUNNY LIGHT did not contact MSC directly. The other five containers were shipped by CHINA SHIPPING CONTAINER LINES.

Because the consignee, QIU XIN, did not obtain import licensing document, QIU XIN failed to declare the import goods to the Customs of China. MSC sent a notice to inform the matter to SUNNY LIGHT on or around May 27, 2005. SUNNY LIGHT asked MSC for a waiver of demurrage and that the containers be shipped back to the United States on SUNNY LIGHT's expense so that SUNNY LIGHT could sell the goods to other customer to mitigate SUNNY LIGHT's loss. Demurrage charges happened when importer failed to declare the import goods and kept containers for more than certain free days. Demurrage charges increased on daily bases. MSC agreed to waive demurrage in condition that SUNNY LIGHT would pay MSC the expense to ship back the containers. The containers were not shipped back as agreed, and MSC sent a provisional invoice for demurrage charges to SUNNY LIGHT on or around January 13, 2006. On or around May 31, 2007, MSC informed SUNNY LIGHT that Chinese Customs required MSC to destroy the shipment in Shanghai and the cost for the destruction would represent about $13,341.00.

QIU XIN failed to declare to the Customs of China for SUNNY LIGHT's other five containers of goods shipped by CHINA SHIPPING CONTAINER LINES. However, upon SUNNY LIGHT's request, those five containers of goods were shipped back to Los Anglos on or around July 1,2005. SUNNY LIGHT sold the goods to another customer and incurred less loss.

MSC sent its final invoice for an amount of $89,800.00 for demurrage charges and destruction costs associated with the shipment transported under bill of lading MSCUNC456950 on July 11, August 10 and September 6, 2007. SUNNY LIGHT made no payment to MSC since MSC agreed to waive the demurrage. Furthermore, if MSC had shipped back the container as agreed, cost of destruction could be avoided.

### III. ARGUMENT

### POINT ONE

### IT IS PLAINTIFF'S BURDEN TO PROVE WHY THE ATTACHMENT SHOULD NOT BE VACATED

A plaintiff that has obtained an ex parte Rule B attachment order shoulders the burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty claim against the defendant." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 (2d Cir. 2006).

Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief consistent with theses rules.

In such cases, Local Admiralty and Maritime Rule E.1 provides:

> The adversary proceeding following arrest or attachment or garnishment that is called for in Supplemental Rule E(4)(f) shall be conducted by a judicial officer within three court days, unless otherwise ordered.

It is the plaintiff's burden to prove that the attachment is proper. The Second Circuit Court of Appeals commented on Rule E(4)(f) in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006) and explained the following standard:

> [A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. n5
>
> n5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Id.* at 445.

Former Local Rule 12, to which the Second Circuit cited in note 5 of *Aqua Stoli,* provides as follows:

> Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the party of the plaintiff, be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with these rules or the supplemental rules.

*Aqua Stoli Shipping Ltd.,* 460 F.3d at 440.

Additionally, Supplemental Admiralty Rule E(6) provides that "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given...." As set forth above, the court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal,* 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006)

### POINT TWO

### PLAINTIFF'S CLAIM AGAINST DEFENDANT IS FRIVOLOUS
### BECAUSE PLAINTIFF FAILED TO MITIGATE

In *Aqua Stoli,* the Second Circuit Court of Appeals held that given the exceptional remedy of maritime attachments when normal civil proceedings are readily available, the district courts have the inherent authority to vacate abusive or unfair attachments. *Aqua Stoli Shipping Ltd., v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006). The Court so held in the context of praising Judge Leval's holding in *Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.,* 476 F.Supp. 119 (S.D.N.Y. 1979). The *Aqua Stoli* court held that "Then-District Judge Leval astutely noted, however, the possibility of abuse by the attaching party in some circumstances." *Aqua Stoli,* 460 F.3d at 442. One such case of abuse occurs when a party who can be "found" in the Southern District of New York has assets attached "across the river" in the Eastern District of New York. In *Integrated Container,* Judge Leval held that where there is an "abusive use of the maritime attachment remedy...the courts may easily remedy the situation by exercising discretion to set aside an unfair attachment." *Integrated Container,* 476 F.Supp. at 124. Based on the facts of *Integrated Container,* which was itself an "across the river" case, Judge Leval held that the attachment was not unfair because "there can be no doubt that

5

plaintiffs' need for security is real, [and] that their quest for attachment is not a tactic of harassment." *Id.; see also Central Hudson Gas and Elec. Corp. v. Empresa Naviera Santa, SA,* 845 F. Supp. 150, 153 (S.D.N.Y. 1994) ("The Rule was not abused, inasmuch as there was a substantial risk that [plaintiff] would not be able to locate sufficient assets to satisfy its claims, which in turn were not frivolous." (citations omitted)).

Likewise, in *Bay Casino, LLC v. M/V ROYAL EMPRESS,* 1999 U.S. Dist. LEXIS 22357 (S.D.N.Y. 1999) in the context of a defendant's challenge to a maritime attachment, and where the plaintiff provided "misleading information regarding projected profits and actual costs" the court held that "plaintiffs lost profits claim is frivolous and, therefore, improperly included as part of the security." *Id.* at *3-4. The *Bay Casino Court* further held that the claim was frivolous because the very existence of the damages were uncertain, *i.e.,* where profits were speculative at best, and that recovery was unwarranted where the plaintiff could not potentially prove loss to a reasonable certainty standard. "It is well-settled that in attachment proceeding, the plaintiff need not prove its damages with exactitude but the court must be satisfied that the plaintiff's claims are not frivolous," *Id. at *3* citing *Dongbu Express Co. v. Navios Corp.,* 944 F. Supp. 235 (S.D.N.Y. 1996). Addressing New York law, the court rejected the plaintiffs lost profits claim and partially vacated the attachment because allowing security for a frivolous claim would have put the plaintiff in a better position than it otherwise would have been without the defendant's involvement. The *Bay Casino* court held as follows:

> Several grounds for such a finding [that the claim was frivolous] were apparent in both the parties' pleadings and in their representations to the Court in the hearing on this matter.
>
> The standard for proving an entitlement to lost profits requires that:
>
> a. profits must have been lost because of the breach;
> b. the loss must be capable of proof with reasonable certainty; and

6

> c. the particular damages must have been in contemplation of the parties at the time the agreement was made.
>
> * * *
>
> While the plaintiff has a much lighter burden of proof in this [Rule E(4)(f)] proceeding than at trial, the Court still can find no basis in law or in fact to find plaintiffs claim non-frivolous....
>
> Additionally, neither in their pleadings, nor in their representations to this Court has plaintiff provided the Court with an evidentiary basis for historical profits that would indicate plaintiff's claims for lost profits constitutes anything more than bald speculation. Absent this, especially in consideration of the fact that plaintiffs are marketing...a consumer driven , highly volatile venture[,] plaintiff cannot potentially prove loss to a reasonable certainty.
>
> * * *
>
> Defendants cite *Rolls Royce v. Fratzis M.,* 1996 AMC 393, 396 (S.D.N.Y. 1995) in heralding the Court's responsibility to address the question of:
>
>> In obtaining the attachment...have the plaintiffs engaged in improper practices to such a degree or do the circumstances reveal a want of equity so manifest, as to require the attachment to be vacated in its entirety.
>
> In reducing the security, this Court is mindful of its discretion under both law and equity. Since plaintiffs will not be able to prove a claim for lost profits based solely on questionable projections, unsupported by historical profits, the Court declines to secure the claim... Considering the facts at bar, this Court considers that clear guidance in determining plaintiff's lost profits claim is frivolous. Thus, plaintiffs claim for lost profits will not be considered in calculating an appropriate security.

*Bay Casino,* 1999 U.S. Dist. LEXIS 22357 at *4-7.

The above holding bring into sharp focus that district courts are empowered with authority to vacate frivolous and abusive attachment. As applied to this case, MSC's claim is frivolous such that vacatur is appropriate. MSC's claim is frivolous because the very existences of damages were uncertain. Under Article 30 of Customs Law of China, where the importer of the import goods fails to declare the import goods to the Customs within three months of the

7

declaration of the arrival of the means of transport, the goods could be taken over and sold by the Customs to setoff demurrage. Carrier could also ship back the container on a timely fashion to minimize demurrage.

In *Bay Casino*, the court held that one of the standard for proving an entitlement to lost profits requires that the particular damages must have been in contemplation of the parties at the time the agreement was made. In this case, MSC has agreed to waive demurrage against SUNNY LIGHT in condition that SUNNY LIGHT would pay the cost to ship back the containers. Thus, the damages MSC asked for has not been in contemplation of the parties at the time the agreement was made.

Moreover, MSC failed to make reasonable effort to mitigate damages. MSC could either let the goods to be auctioned or ship back the containers in a timely fashion to avoid unnecessary costs. Under the facts, it seems like MSC simply forgot about those two containers until Chinese Customs required MSC to destroy the goods about a year and four months later. MSC's recovery is unwarranted.

**POINT THREE**

**ALTERNATIVELY, PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE E(6) THE COURT SHOULD REDUCE THE AMOUNT OF THE ATTACHMENT TO AN AMOUNT COMMENSURATE WITH PLAINTIFF'S PROVABLE DAMAGES, IF ANY**

Alternatively, SUNNY LIGHT moves pursuant to Rule E(6) for a reduction of security, *i.e.,* the release of the majority of the $94,449.91 under attachment. SUNNY LIGHT so moves on the basis that MSC's damages are either non-existent or grossly exaggerated. Supplemental Admiralty Rule E(6) provides that " Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given...." As set forth *supra,* the Court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the

8

attachment when good cause is shown." *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal,* 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006).

In *Dongbu Express Co., Ltd. v. Navios Corp.,* 944 F.Supp. 235 (S.D.N.Y. 1996), the vessel charterer sued the vessel owner and sought a maritime attachment in the Southern District of New York in support of a London arbitration. At the same time, the charterer also brought an attachment action in South Korea. The charterer attached funds in South Korea and in New York. Consequently, the owner moved this district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment, and that the charter had become oversecured. Judge Scheindlin agreed that the charterer was oversecured and, therefore, ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between charterer's provable damages and the amount of the Korean attachment. In so doing, Judge Scheindlin held that "in a an attachment proceeding, the plaintiff need not prove its damages with exactitude" and held further that "[b]ut *the court must be satisfied that plaintiff's claims are not frivolous." Id.* at 237 (citations omitted)(emphasis added).

In *Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal,* 411 F. Supp. 2d 386 (S.D.N.Y. 2006), Judge Casey reduced the amount of a maritime attachment to a level that he viewed as reasonable under the circumstances and held as follows:

> A district court has the inherent authority to vacate an attachment "upon a showing of 'any improper practice' or a 'manifest want of equity on the part of the plaintiff.' " Blake Mar., Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, No. 05 Civ. 8033, 2005 WL 2875335, at 2 (S.D.N.Y. Oct. 31, 2005) (quoting Southern District of New York Former Local Civil Rule 12 (1986)). The Second Circuit has held that the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." *Greenwich Marine, Inc. v. S.S. Alexandria,* 339 F. 2d 901, 905 (2d. Cir. 1965).

9

*Sea Transport Contractors, Ltd.,* 411 F. Supp. 2d at 391. Judge Casey found that "good cause" existed per Rule E(6) to reduce the amount of the attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract.

Based on the above authority, MSC is not entitled to security in the amount of $94,449,91 for its claim for MSC failed to mitigate the damages.

## IV. **CONCLUSION**

For the foregoing reasons, the Court should vacate the attachment and direct the garnishees to release all restrained funds. In the alternative, this Court should reduce the amount of the attachment to a reasonable amount to secure only the provable damages.

Dated: May 5, 2008
      New York, NY

                                                Defendant,
                                                SUNNY LIGHT, INC.

                                    By: _____
                                                Michael S. Weinstock, Esq.
                                                Wong, Wong & Associates, P.C.
                                                150 Broadway, Suite 1588
                                                New York, NY 10038
                                                (212) 566-8080
                                                (212) 566- 8960 (fax)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

MEDITERRANEAN SHIPPING COMPANY, S.A.

                Plaintiff,

   -against-

SUNNY LIGHT, INC. D/B/A SUNNY LIGHT
COMPANY and SHANGHAI QIU XIN CO., LTD.,

                Defendants.

Case No. 08cv1908 (RMB)

**AFFIDAVIT IN SUPPORT OF MOTION TO VACATE ATTACHMENT**

-------------------------------------------------------------------------X

STATE OF             )
                               ) ss.:
COUNTY OF          )

      I, Tony Wu, being duly sworn, deposes and says:

1. I, Tony Wu, the general manager of SUNNY LIGHT INC. a/k/a SUNNY LIGHT COMPANY (SUNNY LIGHT"), am the defendant in the above-entitled action, and respectfully move this Court to issue an order to vacate the attachment on my Chase bank account with the account number 638711044.

2. The reason why I am entitled to the relief I seek is the following.

3. On or about March 17, 2005, after receiving payment from Defendant SHANGHAI QIU XIN CO., LTD. ("QIU XIN") for the purchase of seven containers, Defendant SUNNY LIGHT shipped the seven containers that had been sold to Shanghai, China.

4. Two out of seven containers were shipped by Plaintiff MEDITERRANEAN SHIPPING COMPANY, S.A. ("MSC") through the shipping agent FR.MEYER'S SOHN NORTH AMERICA LLC.

1

5. SUNNY LIGHT did not contact MSC directly.

6. The other five containers were shipped by CHINA SHIPPING CONTAINER LINES.

7. Because the consignee, QIU XIN, did not obtain the necessary import licensing documents, QIU XIN failed to declare the import goods to the Customs Department of China.

8. MSC sent a notice to SUNNY LIGHT to inform it of the matter on or around May 27, 2005.

9. SUNNY LIGHT asked MSC for a waiver of demurrage and that the containers be shipped back to the United States at SUNNY LIGHT's expense so that SUNNY LIGHT could sell the goods to other customers to mitigate SUNNY LIGHT's losses.

10. MSC agreed to waive demurrage on the condition that SUNNY LIGHT would pay MSC the expense to ship back the containers.

11. The containers were not shipped back as agreed, and MSC sent a provisional invoice for demurrage charges to SUNNY LIGHT on or around January 13, 2006.

12. MSC never informed SUNNY LIGHT that Chinese Customs had required MSC to destroy the shipment in Shanghai and the cost for the destruction would be approximately $13,341.00.

13. The same situation occurred with SUNNY LIGHT's other five containers of goods shipped by CHINA SHIPPING CONTAINER LINES. However, those five containers of goods were shipped back to Los Anglos on or around July 1, 2005. SUNNY LIGHT sold the goods to another customer and thereby mitigated some of its losses.

14. MSC sent a final invoice for an amount of $89,800.00 for demurrage charges and destruction costs associated with the shipment transported under bill of lading MSCUNC456950 on July 11, August 10 and September 6, 2007.

15. SUNNY LIGHT made no payment to MSC since MSC agreed to waive the demurrage. Furthermore, if MSC had shipped back the container as agreed upon between SUNNY LIGHT and MSC, destruction costs could have been avoided.

**WHEREOF**, I respectfully request that the Court grant this motion, as well as such other and further relief as may be just and proper.

Date: May ___, 2008

_____//s//_____
Tony Wu

Affirmed before me this
    day of May, 2008

_____
NOTARY PUBLIC